**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **IN RE EGGHEAD.COM. INC., a Delaware Corporation F/K/A ONSALE, INC., a California Corporation,**<br><br>       **Debtor.**<br>_____<br><br>**AFFILIATED CORPORATE SERVICES, INC.,**<br><br>       **Appellant,**<br><br>       v.<br><br>**CHARLES E. SIMS, Trustee under Confirmed Plan,**<br><br>       **Appellee.**<br>_____/ | **No. CV 03-03324  WWS**<br><br><br><br><br><br>**MEMORANDUM OF OPINION AND ORDER** |

   Affiliated Corporate Services, Inc. (ACSI), appeals the summary judgment entered by the United States Bankruptcy Court for the Northern District of California in favor of the estate in bankruptcy of Debtor Egghead.com, Inc., and Trustee Charles E. Sims, administrator of the Debtor's estate, in an adversary proceeding initiated by the Trustee.  The judgment determined that the sum of $214,650 received by ACSI from Egghead.com is subject to the administration

of the Trustee.[1] ACSI contends that the evidence presented to the Bankruptcy Court established the existence of genuine issues of material fact precluding entry of summary judgments. This Court has jurisdiction of the appeal under 28 U.S.C. § 158(a) and for the reasons presented below reverses the judgment of the Bankruptcy Court and remands the matter to that court for further proceedings in conformity with this Order.

## BACKGROUND

The following facts are taken from the parties' briefs on appeal and from the papers included in the record on appeal filed by ACSI. The facts are disputed where noted.

In 1996, Egghead.com purchased telemarketing software and 250 software licenses from Ecometry Corporation. In late 2000, Egghead.com entered into negotiations with Ecometry for an additional 750 software licenses. Around the same time, Egghead.com entered into negotiations with ACSI to finance Egghead.com's acquisition of the new licenses pursuant to a business equipment lease (the Lease). ACSI and Egghead.com signed this Lease in January 2001. The Lease stated that it was for 750 software licenses, with a total value of $2 million, and specified that an "Advance Payment of $214,650, which equals the first and Second payment(s), the security deposit, and a $0.00 documentation fee MUST ACCOMPANY LEASE."[2] Ex. B to Decl. of Jeffrey Sheahan in Supp. of Trustee's Mot. for Summ. J. Egghead.com paid ACSI the $214,650 advance payment.

---

[1] The order granting summary judgment was on a form submitted by counsel for the Trustee and contained no findings of fact or statement of reasons. The record contains no transcript of the proceedings in the Bankruptcy Court. The Court obtained fragmentary information about the proceedings below from a sound recording supplied by the court reporter. (See note 3, below.)

[2] The third paragraph of the Lease provides in part,

> RENT AND OTHER PAYMENTS. . . . If Lessee has paid advance rentals or any other amounts prior to the Lease Start Date (collectively, "the Subject Payments"), but fails for any reason not the fault of Lessor to approve the applicable supply contract or fails, in any other way, to complete and proceed with the transaction which is the subject of the Lease, then, in addition to any other rights or remedies Lessor may have, Lessor may retain all of such Subject Payments, it being acknowledged by Lessee that the amount of same reasonably approximates Lessor's costs and expenses in preparing for and documenting this Lease transaction and is far less than Lessor's expected profit from this Lease transaction.

Ex. B to Sheahan Decl.

2

The second paragraph of the Lease provides,

> COMMENCEMENT AND TERMINATION. This lease shall be binding on Lessor only when accepted and signed by a duly authorized officer of Lessor. Lessor may insert in the space appearing below the "Lease Start Date," which shall be the earlier of the date the Equipment (or any portion of it) is delivered to Lessee or the date Lessor disburses the purchase price (or any portion of it) to the supplier.

Exh. B to Sheahan Decl. In the blank marked "Lease Start Date" is handwritten the date "1/01/01." *Id.*

The Trustee asserts that Egghead.com never received the "Equipment" that was the subject of the lease, namely, the 750 additional software licenses, and has presented declarations from Egghead.com and Ecometry officers in support of this assertion. See Sheahan Decl., ¶ 9; Decl. of John Marrah in Supp. of Trustee's Mot. for Summ. J., ¶ 2; Decl. of Mark Shepherd in Supp. of Trustee's Supp. Mot., ¶ 12; Decl. of Edward Carroll in Supp. of Trustee's Supp. Mot., ¶ 9. The Trustee also asserts that ACSI never disbursed any advance payments to Ecometry. Decl. of Cathy L. Croshaw in Supp. of Trustee's Mot. for Summ. J., ¶ 2.

ACSI, in turn, points to the "Certificate of Acceptance," attached to the Lease and signed by the CFO of Egghead.com and dated "1/1/01." Ex. B to Sheahan Decl. The certificate reads in part, "The undersigned hereby acknowledges receipt, in good condition, of the Equipment described in the Business Equipment Lease . . . and unconditionally accepts the Equipment in accordance with all of the terms and conditions of that certain Business Equipment Lease." *Id.* ACSI submitted a declaration of its Senior Vice President stating that "Ecometry insisted on a [particular] start date [for the business equipment lease] . . . because they had already delivered the software to Egghead." Decl. of Ronald L. Mitchell in Supp. of Resp. to Mot., ¶ 6. ACSI also submitted a letter sent from Ecometry to ACSI dated February 27, 2001, and stating in part, "This letter will confirm that upon destruction or theft of the Ecometry software provided to Egghead.com, we will provide a replacement copy at no additional cost as soon as practicable." Ex. to Mitchell Decl. Further, on April 23, 2001, Egghead.com's CFO sent ACSI a letter stating that "Egghead.com no longer needs the 750 software licenses acquired from Ecometry, and we are negotiating a modified agreement with Ecometry for substantially

3

fewer licenses. Accordingly, Egghead.com and Ecometry will not need the lease financing previously arranged through ACSI." Ex. to Mitchell Decl.

The parties dispute the significance of these letters. ACSI contends that they indicate that Egghead.com did receive the 750 software licenses that were the subject of the Lease. The Trustee contends that the letter refers to previously acquired licenses, "not to the 750 additional software licenses that were the subject of the lease financing agreement with ACSI." *See* Shepherd Decl. ¶ 9.

In August 2001, Egghead.com filed a petition for relief under Chapter 11 of the Bankruptcy Code. The appointed Trustee initiated an adversary proceeding for recovery of the advance payment to ACSI and moved for summary judgment declaring the $214,650 to be part of the estate in bankruptcy. The Trustee argued that by its own terms, the Lease had never gone into effect, since Egghead.com never received any of the 750 software licenses that were the subject of the Lease, and ACSI never disbursed any payments to Ecometry. Therefore, the Trustee argued, the advance payments were in the nature of a pre-petition security deposit and should be deemed to have remained part of the debtor's estate.

In opposing the motion, ACSI argued that it had raised a genuine issue of material fact as to whether the Lease had ever gone into effect. From ACSI's subsequent papers ACSI appears to have been taking the position that the Lease did go into effect, that Egghead.com defaulted on it by attempting to renegotiate it, and that this default, by the terms of the Lease, rendered the advance payment a form of valid liquidated damages. *See* Resp. to Mot. at 4-6; Supp. to Summary to Resp. to Mot. at 2-3. In this connection, ACSI contended, first, that the Lease was on its face in effect from January 1, 2001, and, second, that there was a genuine issue as to whether Egghead.com ever received the 750 licenses that were the subject of the Lease.

The Bankruptcy Court (Carlson, B.J.), (apparently) having found that the Lease had never gone into effect, granted the Trustee's motion for summary judgment by order filed

4

June 16, 2003.[3]  ACSI timely filed a notice of appeal and elected to have the appeal heard in United States District Court.

## LEGAL STANDARD

The Court reviews the legal conclusions of the Bankruptcy Court de novo and its factual determinations for clear error.  *In re Cisneros*, 994 F.2d 1462, 1464 (9th Cir. 1993).

Federal Rule of Bankruptcy Procedure 7056 provides that Rule 56 of the Federal Rules of Civil Procedure "applies in adversary proceedings."  FED. R. BANKR. P. 7056.  Summary judgment pursuant to Rule 56 is indicated when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  Affidavits "[s]upporting and opposing" a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  FED. R. CIV. P. 56(e).

The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense, but with respect to issues on which the movant does not bear the burden of proof at trial, the movant need only point to the absence of evidence on an essential element of the nonmovant's claims or affirmative defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986).  The burden then shifts to the nonmovant to produce evidence in support of its claims or affirmative defenses by affidavits, depositions, answers to interrogatories, and admissions on file that designate "'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324 (citing FED. R. CIV. P. 56(e)).

---

[3]The basis for the Bankruptcy Court's decision is undisclosed.  It appears from a sound recording of the hearing on the summary judgment motion on June 16, 2003, that the Bankruptcy Court at a prior hearing had already ruled that the Lease had never gone into effect.  A brief submitted by ACSI in connection with this motion also refers to an earlier hearing on January 31, 2003, at which the Bankruptcy Court issued its tentative ruling on the motion.  *See* Supp. to Summ. to Resp. to Mot. for Summ. J. at 2.  However, neither the tentative ruling nor a record of a January 31, 2003, hearing appears in the docket for this matter in Bankruptcy Court.  At the June 16, 2003, hearing, the Bankruptcy Court addressed only whether, assuming the advance payment was the property of the estate in bankruptcy, ACSI might be entitled to an equitable setoff in reimbursement for its expenses in negotiating the Lease.

## DISCUSSION

This appeal turns on the proper characterization of the $214,650 paid by Egghead.com to ACSI. The Trustee characterizes the payment as a prepayment deposit that must be considered part of the estate in bankruptcy. *See In re Sluggo's Chicago Style, Inc.*, 912 F.2d 1073, 1075 (9th Cir. 1990) (holding that certificate of deposit toward owed and unpaid taxes was not held in trust by Board of Equalization, but was property of estate in bankruptcy). ACSI characterizes the payment as valid liquidated damages to which ACSI is entitled as a result of Egghead.com's breach of the terms of the Lease. *See In re Bubble Up Delaware, Inc.*, 684 F.2d 1259, 1262-63 (9th Cir. 1982) (holding liquidated damages clause enforceable against debtor in breach of contract). The disposition of the $214,650 therefore turns on whether the lease went into effect and the issue on this appeal is whether the Bankruptcy Court erred in holding as a matter of law that it did not.

The Trustee supported his motion for summary judgment with declarations and exhibits said to show that (1) Ecometry never delivered the 750 software licenses to Egghead.com, (2) ACSI never disbursed the $214,650 to Ecometry, and (3) the Lease by its terms could not have gone into effect until one of these conditions occurred. With these submissions, the burden of production shifted to ACSI to show genuine issues of fact precluding summary judgment against ACSI. *Celotex*, 477 U.S. at 324.

ACSI does not dispute that it never paid Ecometry the $214,650 in controversy but contends that genuine issues exist as to the Trustee's other two contentions, i.e., (1) whether the Lease went into effect because Ecometry delivered to Egghead.com the licenses addressed in the Lease, or alternatively, (2) whether the Lease went into effect on the date handwritten in the "Lease Start Date" blank on the Lease.

There is no merit to ACSI's contention that a genuine issue exists as to whether the Lease went into effect on the date handwritten in the "Lease Start Date" blank. The plain language of the Lease precludes such an interpretation of its terms. The Lease provides that the "Lessor *may* insert in the space appearing below the 'Lease Start Date,' which *shall* be the earlier of the date the Equipment (or any portion of it) is delivered to Lessee or the date Lessor

disburses the purchase price (or any portion of it) to the supplier" (emphasis added). Use of the term "may" indicates that the "Lease Start Date" blank might be left blank at the lessor's option without effect on the operation of the Lease. Since the space might be left blank without keeping the Lease from going into effect, the start date of the lease cannot depend on the date entered in the blank. Moreover, use of the term "shall" removes discretion from the lessor about the Lease start date which must be the date of the earlier of the two specified events. ACSI did not produce evidence suggesting ambiguity about the meaning of this provision. In this regard. ACSI's only evidence relating to the date entered in the "Lease Start Date" blank suggests that Ecometry desired a particular start date because "they had already delivered the software to Egghead." Mitchell Decl., ¶ 6. This evidence concerns whether one of the conditions named in the Lease occurred, not to whether the date handwritten in the "Lease Start Date" blank controlled the effective start date of the Lease.

ACSI did, however, present evidence raising a genuine issue as to whether Ecometry delivered to Egghead.com the 750 licenses that were the subject of the Lease. As noted, in support of the motion for summary judgment the Trustee submitted declarations from Egghead.com and Ecometry officers asserting on the basis of personal knowledge that these licenses were never delivered or received. *See* Sheahan Decl., ¶ 9; Marrah Decl., ¶ 2; Shepherd Decl., ¶ 12; Carroll Decl., ¶ 9. These submissions shifted the burden of production to ACSI to show that a genuine issue remained as to whether the licenses had been delivered. ACSI contends that the following submissions satisfy this burden: (1) the letter of February 27, 2001; (2) the letter of April 23, 2001; (3) the declaration and affidavit of Ronald L. Mitchell, Senior Vice President of ACSI; and (4) the Certificate of Acceptance purportedly completed and signed by Jeffrey Sheahan, President of Egghead.com.

The letter of February 27, 2001, and Mitchell's statements do not clearly controvert the declarations submitted by the Trustee in support of the motion for summary judgment. The letter of February 27, 2001 refers to "the Ecometry software provided to Egghead.com." Exh. to Mitchell Decl. It does not refer to or imply the delivery of any software licenses to Egghead.com. Mitchell's declaration similarly refers to "software" already delivered to

7

Egghead.com. Mitchell Decl. in Supp. of Resp. to Mot., ¶ 6. Mitchell's affidavit asserts that he "was told by the vendor, the broker, and the lessee (Egghead) that all software licenses had been delivered" before the Christmas holiday of 2000. Aff. of Ronald L. Mitchell in Supp. of Resp. to Mot., ¶ 5. It is not clear, however, that this assertion would be admissible at trial and can be considered in connection with this motion. FED. R. CIV. P. 56(e).

Even if it cannot, the letter of April 23, 2001, and the Certificate of Acceptance signed by an officer of Egghead.com directly controvert the declarations submitted by the Trustee. The letter of April 23, 2001, signed by Mark Shepherd, then-CFO of Egghead.com, states in pertinent part, "Egghead.com no longer needs the 750 software licenses acquired from Ecometry, and we are negotiating a modified agreement with Ecometry for substantially fewer licenses." Ex. to Mitchell Decl.; *see also* FED. R. EVID. 801(d)(2). Although the Trustee points to a declaration by Shepherd asserting that this is a reference to licenses delivered prior to 2000, *see* Supp. Mot. for Summ. J. at 5, the Trustee nowhere else asserts or suggests that Egghead.com had acquired 750 software licenses from Ecometry prior to 2000. It is a fair inference from this letter the software licenses had been delivered to Egghead.com.

More direct evidence of this fact is the Certificate of Acceptance, apparently signed on January 1, 2001, by the "EVP/CFO" of Egghead.com, which states:

> The undersigned hereby acknowledges receipt, in good condition, of the Equipment described in the Business Equipment Lease or on any schedule (the "Equipment"), after having had a reasonable opportunity to accept the Equipment, and unconditionally accepts the Equipment in accordance with all of the terms and conditions of that certain Business Equipment Lease ("Lease"). . . . The undersigned Lessee has selected, and requested that Lessor purchase the Equipment under the Lease from one or more Supplier(s)/Vendor(s). . . .
> DO NOT SIGN THIS ACCEPTANCE UNTIL YOU HAVE ACTUALLY RECEIVED ALL THE EQUIPMENT SET FORTH IN THE ABOVE-REFERENCED LEASE.

Ex. B to Sheahan Decl. The Trustee's only response is that the inferences raised by ACSI's evidence are "controverted" by his evidence. He argues, "Even when drawing all inference[s] in a light most favorable to ACSI, ACSI's assumption that the software licenses were actually delivered [is] directly controverted by the statement of John Marrah of Ecometry and by Mark Shepherd, Jeff Sheahan and Edward Carroll of Egghead.com, all of whom submitted

8

declarations based upon first-hand knowledge that the software licenses at issue were not delivered to Egghead.com." Appellee's Br. at 8.

Accordingly, whether the licenses were delivered–and hence, whether the Lease commenced–is a disputed issue of fact precluding summary judgment. The matter must be remanded for an evidentiary hearing to resolve this pivotal issue of fact.

## CONCLUSION

For the reasons presented, the judgment of the Bankruptcy Court is **REVERSED** and the matter is **REMANDED** for further proceedings consistent with this Order.

**IT IS SO ORDERED.**

Dated: July 26, 2005

WILLIAM W SCHWARZER
SENIOR UNITED STATES DISTRICT JUDGE